UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THELMA CLARK,

                              Plaintiff,

      v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                              Defendant.

**MEMORANDUM & ORDER**

08 Civ. 10389 (LBS)

---

SAND, J.

      Pursuant to 42 U.S.C. § 405(g), Plaintiff Thelma Clark seeks review of a final decision of the Commissioner of Social Security (the "Commissioner"), finding that she was not eligible for Supplemental Security Income ("SSI") under the Social Security Act. Plaintiff filed an application for SSI on October 22, 2004. A hearing was held before an administrative law judge ("ALJ") on September 29, 2006. The ALJ issued a decision on October 16, 2006 finding that Plaintiff became disabled on May 21, 2005, her fiftieth birthday, but was not disabled for the approximately seven months between the application date and her fiftieth birthday. The decision became final on March 25, 2008 when the Appeals Council denied Plaintiff's request for review. Plaintiff then brought this action in federal court, contending that the ALJ erred by not finding her disabled for the approximately seven months prior to her fiftieth birthday. Both parties move for judgment on the pleadings. For the following reasons, Plaintiff's alternative request for a

1

remand is granted, both motions are denied in all other respects, and we reverse the Commissioner's decision and remand for further proceedings.

**I.      Standard of Review**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  Plaintiff has the burden of demonstrating disability by "evidence obtained by medically acceptable clinical laboratory techniques." 42 U.S.C. §§ 423(d)(1), 423(d)(3).

In evaluating disability claims, the Commissioner is required to follow a five-step process. *See Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999).  "First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience. . . .  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines

whether there is other work which the claimant could perform." *Rosa v. Callahan,* 168 F.3d 72, 77 (2d Cir. 1999) (citation omitted).

A district court's review of an SSI determination involves two levels of inquiry. First, the court determines whether the Commissioner applied the correct legal principles. *Tejada*, 167 F.3d at 773. Next, the court examines the record to determine whether the Commissioner's decision is supported by substantial evidence. *Id.* Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Pursuant to the fourth sentence of 42 U.S.C. § 405(g), this Court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand for further proceedings is the usual remedy when the record is incomplete or the ALJ has committed legal error. *Curry v. Apfel*, 209 F.3d 117, 124 (2d Cir. 2000); *McClain v. Barnhart*, 299 F. Supp. 2d 309, 329 (S.D.N.Y. 2004).

**II.     Discussion**

The ALJ found Plaintiff not disabled until May 21, 2005 (approximately seven months after her application date) after completing the five-step sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 22, 2004. (Tr. at 25.[1]) At step two, the ALJ found that Plaintiff's morbid obesity and degenerative disc and bone disease of the lumbrosacral spine were severe impairments, but declined to find that Plaintiff had any severe psychological impairment

---

[1] All citations to "Tr." refer to the certified transcript of the administrative record attached to the Commissioner's Answer, which the Commissioner is required to file pursuant to 42 U.S.C. § 405(g).

3

despite a June 7, 2005 diagnosis of major depressive disorder. (Tr. at 25.) At step three, the ALJ found that none of Plaintiff's impairments, individually or in combination, met or medically equaled an impairment in the Commissioner's Listing of Impairments. (Tr. at 25.) At step four, the ALJ found that Plaintiff had the residual functional capacity to sit for up to six hours, stand or walk for up to two hours, and occasionally carry objects weighing up to ten pounds; as to Plaintiff's "non-exertional limitations" (such as mental functional limitations), the ALJ found that the Plaintiff either had no non-exertional limitations or had the functional capacity to perform simple, routine, low stress work requiring low levels of concentration. (Tr. at 25.) The ALJ also found that Plaintiff had no past relevant work. (Tr. at 25.) At step five, the ALJ relied on the testimony of a vocational expert to find that there were jobs in the national economy that Plaintiff could perform. (Tr. at 25-26); *see* 20 C.F.R. §§ 416.920(a)(4)(i)-(v).

Plaintiff was forty-nine years of age when she applied for benefits. While the ALJ found Plaintiff not disabled at age forty-nine, he applied the Medical-Vocational Guidelines (the "Grids") to determine that Plaintiff became disabled upon reaching age fifty.[2] (Tr. at 26.) "Unlike a person in the age 45-49 category, according to Medical-Vocational Rule 201.09, a person who is age 50-54, is limited to sedentary work, has limited or less education, and has only unskilled or no prior work experience, should be found to be disabled." *Corbin v. Astrue*, No. 07 Civ. 2241 (EFB), 2009 WL 799268, at *11 (E.D. Cal. Mar. 23, 2009) (*citing* 20 C.F.R. Pt. 404, subpt. P, app. 2, tbl.1).

---

[2] The Grids are applied "in cases which cannot be evaluated on medical considerations alone, where an individual with a severe medically determinable physical or mental impairment(s) is not engaging in substantial gainful activity and the individual's impairment(s) prevents the performance of his or her vocationally relevant past work." 20 C.F.R. pt. 404, subpt. P, app. 2 § 200(a). The Grids reflect a consideration of a claimant's age in combination with her education, experience, and residual functional capacity. *Id.*

4

### a. Weight of Treating Physician's Opinion

Plaintiff argues that the ALJ committed legal error by failing to assign controlling weight to the opinion of Dr. Leung, who diagnosed Plaintiff with major depressive disorder on June 7, 2005.  (Tr. 147-49.)  As part of his diagnosis, Dr. Leung rated Plaintiff on the 0-100 Global Assessment of Functioning (GAF) scale.  The GAF is "a scale used by clinicians for reporting an individual's overall level of psychological functioning."  *De Roman v. Barnhart*, No. 03 Civ. 75 (RCC) (AJP), 2003 WL 21511160, at *3 n.11 (S.D.N.Y. July 2, 2003).  When a GAF score is rendered, "[t]he first number indicates the patient's current GAF, while the second number indicates the highest score reported in the previous year."  *Mobley v. Astrue*, No. 09 Civ. 0662, 2010 WL 2025080, at *2 n.1 (W.D. La. Apr. 19, 2010) (*citing* AMERICAN PSYCHOLOGICAL ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, TEXT REVISED, 32-34 (4th ed. 2000) ("DSM-IV-TR")).  Dr. Leung found that Plaintiff had a current GAF score of 50, and had attained a maximum GAF score of 55 for the previous year.  (Tr. at 149.) "A GAF score of 41 to 50 indicates 'serious symptoms OR any serious impairment in social, occupation, or school functioning.'"  *Guptill v. Astrue*, No. 08 Civ. 77 (NAM), 2010 WL 1948199, at *3 n.6 (N.D.N.Y. Apr. 28, 2010) (*quoting* DSM-IV-TR, 34.)  "A GAF in the range of 51-60 indicates moderate symptoms (such as flat affect and circumstantial speech or occasional panic attacks) or moderate difficulty in social, occupational, or school functioning."  *Rojas v. Astrue*, No. 09 Civ. 6698 (DLC), 2010 WL 1047626, at *1 n.2 (S.D.N.Y. Mar. 22, 2010) (*citing* DSM-IV-TR, 34).  Dr. Leung's diagnosis also noted that Plaintiff had been "depressed [for] 2 years."  (Tr. at 149.)

The ALJ stated that "luckily," he did not need to reach "any firm conclusions about the claimant's mental impairments(s)" that existed after reaching age fifty because the Grids dictated that Plaintiff was already disabled at the time she claimed to have a mental impairment and was diagnosed with major depressive disorder.  (Tr. at 24.)  He explained that he was "lucky" to avoid rendering any such decision because the "treating records . . . are of rather poor quality" and the testimony of Dr. Gitelle, the testifying psychological expert, was "so unhelpful."  (Tr. at 24.)  For the period before Plaintiff's fiftieth birthday, the ALJ found that Plaintiff did not have any severe mental impairment.  (Tr. at 24.)  Because Plaintiff was not "receiving or seeking any mental health treatment, but was affirmatively denying that she had any 'severe' mental impairment or depression[,] . . . [any mental impairment] did not exist before [Plaintiff reached age fifty.]"  (Tr. at 24.)

A treating physician's opinion "will be accorded controlling weight when it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence."[3]  *Diaz v. Shalala*, 59 F.3d 307, 309 (2d Cir. 1995) (internal citations and quotations omitted).  The ALJ must provide

---

[3] "It is well-settled that the 'treating physician rule' applies to retrospective diagnoses, relating to some prior time period during which the diagnosing physician may or may not have been a treating source." *Cava v. Barnhart*, No. 03 Civ. 6621 (DC), 2004 WL 1207900, at *9 (S.D.N.Y. Jun. 1, 2004) (*citing Byam v. Barnhart,* 336 F.3d 172, 183 (2d Cir. 2003)).  As discussed *infra*, while the precise nature of Dr. Leung's retrospective diagnosis is unclear from the treatment records, it was the ALJ's duty to resolve this lack of clarity.  *See Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998).

Although it appears from the record that Plaintiff saw Dr. Leung only twice, her extensive treatment at the Upper Manhattan Mental Health Center, with which Dr. Leung was affiliated, is sufficient to establish Dr. Leung as a treating physician.  *See Stringer v. Astrue*, No. 08 Civ. 0694 (LEK), 2010 WL 55925, at *4 n.8 (N.D.N.Y. Jan. 4, 2010) ("[T]he Court could find evidence that Dr. Mitkoff saw Plaintiff only twice . . . .  However, Plaintiff was treated extensively at the Center and College. . . .  As a representative of that facility, Dr. Mitkoff's opinions are entitled to treating physician status, even if, acting alone, he might not be deemed a treating physician."); *see also Schisler v. Bowen,* 851 F.2d 43, 46 (2d Cir. 1988) (defining "treating physician" as "the claimant's own physician, osteopath or psychologist (including outpatient clinic and health maintenance organization) who has provided the individual with medical treatment or evaluation, and who has or who had an ongoing treatment and physician-patient relationship with the individual.") (internal quotation marks and citation omitted).

6

"good reasons" for the weight he assigns the treating physician's opinion. 20 C.F.R. § 404.1527(d)(2). "[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). The Court of Appeals for the Second Circuit has stated that "[w]e do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004).

"[E]ven when a treating physician's opinion is not given *controlling* weight, the opinion is still entitled to *some* weight, given that such physician '[is] likely to be the medical professional[ ] most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.'" *Jerome v. Astrue*, 08 Civ. 98, 2009 WL 3757012, at *5 (D. Vt. Nov. 6, 2009) (*quoting* 20 C.F.R. § 404.1527(d)(2)) (alterations and emphasis in original). "The factors that must be considered when the treating physician's opinion is not given controlling weight include: (i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998) (*citing* 20 C.F.R. § 404.1527(d)(2)).

The ALJ committed legal error by failing to explicitly consider all the required factors when evaluating Dr. Leung's opinion, and failing to explain how much weight he accorded Dr. Leung's opinion for the period before Plaintiff reached age fifty.  The ALJ did consider the consistency of Dr. Leung's opinion with the "record as a whole," and found that "claimant's described activities and interactions with family members, as well as the symptoms she reports to her doctors and their cause, as well as her demeanor at the hearing . . . render a diagnosis of major depressive disorder to be questionable." (Tr. at 24.)  However, the ALJ did not consider "the frequency of examination and the length, nature, and extent of the treatment relationship," or whether the opinion was from "a specialist." 20 C.F.R. § 404.1527(d)(2).  This legal error constitutes grounds for remand. *See, e.g.*, *Regan v. Astrue*, No. 09 Civ. 2777 (BMC), 2010 WL 1459194, at *12 (E.D.N.Y. Arp. 12, 2010) ("The ALJ declined to address how much weight, if any, was given to the opinion of plaintiff's treating sources, or to explicitly consider the required factors here.  Accordingly, remand is appropriate."); *Hach v. Astrue*, No. 07 Civ. 2517 (ENV), 2010 WL 1169926, at *11 (E.D.N.Y. Mar. 23, 2010) (finding ALJ's failure to explain how much weight was given to treating source's opinion constituted proper grounds for remand).

Furthermore, although the psychological expert remarked that the treatment records were often illegible, (Tr. at 271), and the ALJ noted that the records were of "rather poor quality," (T. at 24), these facts alone do not constitute "good reasons" to disregard the treating physician's opinion.  *See* 20 C.F.R. § 404.1527(d)(2).  "[A]n ALJ cannot reject a treating physician's diagnosis without first attempting to fill any clear gaps in the administrative record." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999); *see*

8

*also Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) ("[E]ven if the clinical findings were inadequate, it was the ALJ's duty to seek additional information from [the treating physician] *sua sponte*."). To the extent that the ALJ's decision relied on the insufficiency of the psychological treatment records, the ALJ erred by failing to develop the record.

Lastly, neither the ALJ's subjective impressions nor Plaintiff's hesitance to seek psychological treatment constitute "good reasons" to disregard Dr. Leung's opinion that Plaintiff had a GAF score of at most 55 during the relevant time period and that she had been depressed for "two years." 20 C.F.R. § 404.1527(d)(2); (Tr. at 149.) "In analyzing a treating physician's report, the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion." *Rosa*, 168 F.3d at 78-79 (2d Cir. 1999) (internal quotation marks and citation omitted). Moreover, a "lack of treatment [should not be used] to reject mental complaints both because mental illness is notoriously underreported and because it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Day v. Astrue*, No. 07 Civ. 157 (RJD), 2008 WL 63285, at *5 n.7 (E.D.N.Y. Jan. 3, 2008) (*quoting Regennitter v. Comm'r of Soc. Sec. Admin.,* 166 F.3d 1294, 1299-1300 (9th Cir. 1999)) (internal quotation marks omitted).

### b. The ALJ's Alternative Finding as to Plaintiff's Mental Residual Functional Capacity

Although the ALJ stated that it was his "firm conclusion from the evidence" that Plaintiff had no severe mental impairment during the relevant time period, the ALJ found in the alternative that Plaintiff's mental functional limitations restricted her to "simple, routine, low stress work tasks involving low levels of concentration." (Tr. at 24.) The ALJ asked Mr. Pasternak, the Vocational Expert ("VE"), whether there was any work

9

Plaintiff could perform assuming those alternative limitations.  (Tr. at 24.)  Mr. Pasternak testified that such jobs existed in the local and national economy, which allowed the ALJ to find that Plaintiff would have been found not to be disabled for the relevant period even assuming Plaintiff had some mental functional limitations.  (Tr. at 24.)

Some courts have concluded that when an ALJ's analysis of a treating physician's diagnosis lacks specificity, but the ALJ has nonetheless "applied the substance of the treating physician rule," remand is unnecessary so long as the ALJ's decision is supported by substantial evidence.  *See Halloran,* 362 F.3d at 32 (concluding that the ALJ "applied the substance of the treating physician rule").  Hence, one might postulate that the ALJ's alternative holding complied with the substance of the treating physician rule by adopting Dr. Leung's diagnosis and the mental impairments likely suggested by it.  (*See* Tr. at 149) (diagnosing Plaintiff with "mildly impaired" attention, concentration, and memory, and "fair" insight and judgment).  However, the ALJ's alternative holding is insufficient to prevent remand because the ALJ did not undertake the required analysis to determine precisely which mental functional limitations affected Plaintiff, *inter alia*.

In order to determine a claimant's mental residual functional capacity, the ALJ is "required to itemize various functions . . . .  The particular functions that must be assessed are the basic work-related mental activities specified by the regulations—such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting—to such a degree as to reduce his or her ability to do past relevant work and other work."  *Dickson v. Astrue*, No. 06 Civ. 0511 (NAM) (GHL), 2008 WL 4287389, at *11 (N.D.N.Y. Sept. 17, 2008) (*citing* 20 C.F.R. §§ 404.1520a(d)(3), 404.1545(c),

416.920a(d)(3), 416.945(c); SSR 96-8p, 1996 WL 374184 (July 2, 1996)); *see also Pabon v. Barnhart*, 273 F. Supp. 2d 506, 516 (S.D.N.Y. 2003) (remanding for failure to assess the "basic work-related mental activities specified by the regulations") (citation omitted).

The ALJ did not assess the factors required by the regulations in determining that Plaintiff might be limited to "simple, routine, low stress work tasks involving low levels of concentration." (Tr. at 24.) He "failed to discuss specific work-related capacities, for example, understanding instructions, using judgment, and responding to supervision." *Dickson*, 2008 WL 4287389, at *12. As a result, the hypothetical question posed to the VE is insufficient to prevent remand because it made use of a determination of Plaintiff's residual functional capacity that was based on legal error.[4] *See id.* at *15 ("A hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony.") (*citing Bosmond v. Apfel*, No. 97 Civ. 4109 (RPP), 1998 WL 851508, at *8 (S.D.N.Y. Dec. 8, 1998)).

This error prevents us from finding that the ALJ complied with the substance of the treating physician rule by adopting Dr. Leung's diagnosis in the alternative. The Court cannot be sure that the ALJ gave controlling weight to every aspect of Dr. Leung's diagnosis in the alternative, absent the detailed analysis required by the regulations. Furthermore, as noted above, to the extent that Dr. Leung's diagnosis was too unclear or incomplete to allow an adequate determination of Plaintiff's alternative mental residual functional capacity, the ALJ had a duty to develop the record.[5] Nor is the record

---

[4] We decline to discuss whether the ALJ's finding at step five is supported by substantial evidence due to this legal error.

[5] *See Dickson*, 2008 WL 4287389, at *13 ("In this case, the administrative transcript does not contain any statements from any of plaintiff's treating sources regarding how plaintiff's impairments affect her ability

11

sufficiently developed to enable us to say that "application of the correct legal principles to the record could lead to only one conclusion . . . ." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). Though there is "no guarantee that the outcome will change," these errors require remand. *Oliveras ex rel. Gonzalez v. Astrue,* No. 07 Civ. 2841 (RMB) (JCF), 2008 WL 2262618, at *6-7 (S.D.N.Y. May 30, 2008).

### III.     Conclusion

Accordingly, remand is appropriate because the ALJ committed legal error by failing to (1) consider the necessary factors when determining how much weight to assign Dr. Leung's opinion, (2) state explicitly how much weight was accorded to Dr. Leung's opinion, (3) develop the record to the extent that Dr. Leung's treating records were unclear, and (4) provide good reasons not to afford Dr. Leung's opinion controlling weight as to the period before Plaintiff reached age fifty. Furthermore, the ALJ's alternative determination of Plaintiff's mental residual functional capacity is insufficient to prevent remand because it was legally erroneous. Because these errors necessitate remand, we decline to consider the parties' remaining contentions. On remand, "the ALJ should [determine whether Plaintiff is disabled] after proper application of the treating physician rule and additional development of the record as he sees fit." *Malarkey v. Astrue*, No. 08 Civ. 9049 (JCF), 2009 WL 3398718, at *14 (S.D.N.Y. Oct. 20, 2009).

We recognize that this disposition will disappoint both parties, who have urged a final resolution of this matter. However, we regard the errors committed to be of

---

to perform work-related activities. The ALJ had nothing more than treatment records from Ellis Hospital Mental Health and consultative reports to review. Thus, the ALJ had an affirmative duty, even if plaintiff was represented by counsel, to develop the medical record and request that plaintiff's treating physicians assess plaintiff's functional capacity. The ALJ's failure to seek medical evaluations from plaintiff's treating sources and to apply the proper standard to assess plaintiff's ability to meet the mental demands of work, deprived plaintiff of a full hearing.") (*citing Rosado v. Barnhart*, 290 F. Supp. 2d 431, 441-42 (S.D.N.Y. 2003)).

sufficient magnitude that we cannot in good conscience dispose of the issues in this case by entering judgment on the pleadings. We also recognize that the time and effort required by remand will most likely be disproportionate to the disputed amount of SSI benefits.[6] We therefore urge the parties to consider a consensual resolution of this matter. Please advise the Court if the Court can be of assistance in this regard.

For the foregoing reasons, Plaintiff's alternative request for a remand is granted, both motions are denied in all other respects, and we reverse the Commissioner's decision and remand for further proceedings.

**SO ORDERED.**

Dated: Aug 4 2010
New York, NY

_____
U.S.D.J.

---

[6] We estimate the disputed amount of SSI benefits in this case to be $4023, assuming Plaintiff would have received the federal maximum monthly payment amount for an eligible individual of $564 for two months in 2004 and $579 for five months in 2005. *See SSI Federal Payments Amounts*, U.S. SOC. SEC. ADMIN., http://www.ssa.gov/OACT/COLA/SSIamts.html (last visited Aug. 3, 2010). This estimate does not take into account any supplemental amounts that may have been paid by the State of New York. *See Supplemental Security Income (SSI) in New York*, U.S. SOC. SEC. ADMIN., http://www.socialsecurity.gov/pubs/11146.html (last visited Aug. 3, 2010).